In the Matter of the Contested Case of
NEW BRIGHTON NURSING HOME,
Horizon West Health Care Center, et
al., relators, Appellants,

v.

MINNESOTA DEPARTMENT OF
HUMAN SERVICES,
Respondent.

No. C0-85-34.

Court of Appeals of Minnesota.

May 21, 1985.

K. Craig Wildfang, Minneapolis, for Horizon W. Health Care Center, et al.

Steve M. Mihalchick, Minneapolis, for New Brighton Nursing Home.

Hubert H. Humphrey, III, Atty. Gen., Gary A. VanCleve, Lawrence M. Schultz, Asst. Attys. Gen., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., WOZNIAK and FORSBERG, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Relators, a group of nursing homes, appeal from an order of the Commissioner of Human Services affirming the Department of Human Service's (DHS) decision to use the most recent cost report received by December 31, 1982 and audited by March 1, 1983 as a basis for determining the prospective operating cost payment rate for the rate year beginning July 1, 1983 and ending June 30, 1984. This cost report did not include expenditures for increases in license fees and certain drug costs which were incurred after the cost report was submitted, but before the commencement of the rate year beginning July 1, 1983. The nursing homes contend that Minn. Laws 1981, 3d Spec.Sess., ch. 2, art. 1, § 2, subd. 4(f) (uncodified), provides for reimbursement of increased costs for license fees. The nursing homes further contend that it is unreasonable not to add the costs

of certain drugs to the cost reports before calculating the per diem rates. We affirm.

## FACTS

The appellant nursing homes participate in the State's medical assistance program and are reimbursed on a per diem basis for care which they provide to welfare residents.

Prior to July 1, 1983, the per diem reimbursement rate was governed by Minn. Rules, ch. 9510 (1983). Prospective per diem rates were calculated by dividing the number of patient days for a prior year into the prior year's costs (historical costs), plus projected known cost increases and unidentified cost increases. Under Minn. Rules, ch. 9510, nursing homes were required to submit annual cost reports. The nursing homes were free to choose a fiscal year.

Effective July 1, 1983, the method for establishing the per diem reimbursement rate was changed. Minn.Laws 1983, ch. 199, § 12 (codified at Minn.Stat. § 256B.431 (1984)) (hereinafter cited as chapter 199). DHS adopted temporary Rule 50 to implement the statute. It is effective retroactive to July 1, 1983.

Under the new rate setting system, nursing homes have uniform fiscal years and uniform rate years. The per diem rates are based on operating costs, property-related costs, and real estate taxes and special assessments. The prospective operating cost component for the rate year beginning July 1, 1983 and ending June 30, 1984 is the nursing home's historical operating costs as reported in the most recent cost report received by December 31, 1982 and audited by March 1, 1983. To update the operating cost to June 30, 1983, this reported cost is increased by a nine percent annual rate.

Nursing homes are grouped according to care levels and geographic location. Within each group, a home whose historical operating cost per diem is above the 60th percentile receives the 60th percentile increased by six percent, plus 80 percent of the difference between the allowable oper-

ating cost per diem and the 60th percentile. A home whose historical operating cost per diem is at or below the 60th percentile receives the allowable operating cost per diem increased by six percent.

Prior to the enactment of chapter 199, the Commissioner of Health, pursuant to Minn.Laws 1981, 3d Spec.Sess., ch. 2, art. 1, § 2, subd. 4(f) (uncodified) (hereinafter cited as Minn.Laws.1981, 3d Spec.Sess., ch. 2), increased the license fees for nursing homes retroactive to January 1, 1982. Also in 1982, the legislature changed the manner in which common nonprescription drugs were billed. Minn.Laws 1981, 3d Spec.Sess., ch. 2, art. 1, § 31 (codified at Minn.Stat. § 256B.02, subd. 8(11) (1984)). These drugs are now covered by the per diem rate rather than by separate billings for each resident. While these increases were not claimed on the previous annual cost reports of the nursing homes, DHS approved adjustments in the 1982 per diem rates so the nursing homes could be immediately reimbursed for the increases.

When determining the prospective operating cost component for per diem rates beginning July 1, 1983, DHS used the cost reports received by December 31, 1982 and audited by March 1, 1983. Therefore, the operating cost component does not include the license fee increases or new drug costs which were legislatively mandated in 1982. The nursing homes appealed DHS's decision not to add these costs.

An administrative law judge considered the matter on stipulated facts and cross-motions for summary judgment. He recommended that DHS's decision be affirmed. The Commissioner of Human Services accepted the recommendation and affirmed the decision.

## ISSUES

1. Did DHS properly exclude an earlier increase in license fees when it established appellants' rates of reimbursement for the year beginning July 1, 1983?

2. Did DHS properly exclude the costs of common nonprescription drugs when it

established appellants' rates of reimbursement for the year beginning July 1, 1983?

## ANALYSIS

Our review of an agency decision is limited. Minn.Stat. § 14.69 (1984) provides that we

may affirm the decision of the agency or remand the case for further proceedings; or [we] may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

The nursing homes contend that the Commissioner's decision is affected by error of law because he misconstrues the statutes relating to reimbursements of costs for the period July 1, 1983 to June 30, 1984.

1. The nursing homes first contend that the increases in license fees should have been added to the historical operating costs since they were not included in the most recent cost report received by December 31, 1982 and audited by March 1, 1983. Chapter 199 provides for the determination of operating costs for the period in question:

For the rate year beginning July 1, 1983, and ending June 30, 1984, the prospective operating cost payment rate for each nursing home shall be determined by the commissioner based on the allowed historical operating costs as reported in the most recent cost report received by December 31, 1982 and audited by March 1, 1983, and may be subsequently adjusted to reflect the costs allowed. To determine the allowed historical operating cost, the commissioner shall update the historical per diem shown in those cost reports to June 30, 1983, using a nine percent annual rate of increase after applying the general and administrative cost limitation described in subdivision 2.

Minn.Stat. § 256B.431, subd. 2a. Chapter 199 unambiguously requires the Commissioner to use the historical operating cost as reported by the most recent cost report received by December 31, 1982 and audited by March 1, 1983 to determine the prospective operating cost payment rate. Nonetheless, the nursing homes argue that Minn.Laws 1981, 3d Spec.Sess., ch. 2, requires the Commissioner to add the increase in license fees to the most recent cost report. This statute mandates the Commissioner of Health to establish license fees for health care facilities and further provides that

[t]he statutory percentage limitation for long term care may be exceeded by the amounts of the increased license fees authorized by this provision and charged by the commissioner of health, and the increased fee amount shall be an allowed cost to the extent that the increase when added to other allowed costs exceeds the statutory limitation.

Minn.Laws 1981, 3d Spec.Sess., ch. 2.

Minn.Laws 1981, 3d Spec.Sess., ch. 2 was not repealed by chapter 199. The administrative law judge and the Commissioner concluded that the statute, insofar as it applied to setting nursing home rates, was implicitly repealed. We affirm the decision, but find it unnecessary to implicitly repeal Minn.Laws 1981, 3d Spec.Sess., ch. 2 because it is simply not applicable to the rate structure set forth in chapter 199.

The statutory percentage limitation referred to in Minn.Laws 1981, 3d Spec.Sess., ch. 2, is found in Minn.Stat. § 256B.03, subd. 2 (Supp.1981). This latter statute provides that for the rate years beginning during the biennium ending June 30, 1983, nursing home rates could not "exceed by more than ten percent the final rate allowed to the facility for the preceding rate year." Minn.Stat. § 256B.03, subd. 2 (1984). The limitation here is a maximum

and is in effect only until June 30, 1983. Even if Minn.Laws 1981, 3d Spec.Sess., ch. 2, applies generally and not just with reference to Minn.Stat. § 256B.03, subd. 2, it does not apply to chapter 199. There is no comparable statutory percentage limitation in the chapter 199 rate setting system for the year beginning July 1, 1983. The nine percent, six percent and 80 percent factors are not limitations, but rather they are multiples used to determine the ultimate nursing home rate. Similarly, the 60th percentile factor is not a statutory rate limitation, but a ranking used to determine the ultimate nursing home rate.

■ The increased license fee amount is an allowed cost under Minn.Laws 1981, 3d Spec.Sess., ch. 2, only to the extent that the increase, when added to other allowed costs, exceeds the statutory percentage limitation. If the increase in license fees was added to the allowed historical operating cost, it would then be multiplied by nine and then six percent. There is no limitation that could be exceeded. Since there is no statutory percentage limitation in the rate setting system for the year beginning July 1, 1983, which is similar to the statutory percentage limitation in Minn.Laws 1981, 3d Spec.Sess., ch. 2, this law adds nothing to the new rate setting system.

Chapter 199 plainly requires DHS to use the historical operating cost as reported in a nursing home's most recent cost report in order to compute the operating cost component for determining rates for the year beginning July 1, 1983. The license fee costs incurred after "the most recent cost report" are taken into account by the generous nine percent annual rate of increase. We note, too, that in dollar amounts the increased costs were relatively minimal. DHS correctly applied chapter 199.

■ 2. The nursing homes contend that it is unreasonable to base the operating cost component on the most recent cost report when that report does not include legislatively mandated costs for certain common nonprescription drugs. We do not find the legislation unreasonable. While the historical operating cost component does not include costs for certain common non-prescription drugs, it does include other costs which a nursing home could discontinue. By discontinuing a cost, the home would derive the benefit of the historical cost plus nine percent. DHS properly used the most recent cost report as required by chapter 199 when calculating the operating cost payment for rates commencing July 1, 1983. We affirm.

## DECISION

The Department of Human Services correctly used the most recent cost reports received by December 31, 1982 and audited by March 1, 1983 as a basis for determining the prospective operating cost payment rate for the rate year beginning July 1, 1983.

Affirmed.